## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| PANERA, LLC | * |
| 3630 South Geyer Road, Suite 100 | |
| St. Louis, Missouri 63127 | * |
| | |
| Plaintiff | * |
| | |
| v. | *    Civil Action No.: |
| | |
| UNIVERSITY OF MARYLAND | * |
| MEDICAL SYSTEM CORPORATION | |
| 250 West Pratt Street, 24th Floor | * |
| Baltimore, Maryland 21201 | |
| | * |
| SERVE: | |
| Adil A. Daudi, Esquire | * |
| Resident Agent | |
| 250 West Pratt Street, 24th Floor | * |
| Baltimore, Maryland 21201 | |
| | * |
| and | |
| | * |
| UNIVERSITY OF MARYLAND | |
| MEDICAL CENTER | * |
| 250 West Pratt Street, 24th Floor | |
| Baltimore, Maryland 21201 | * |
| | |
| SERVE: | * |
| Adil A. Daudi, Esquire | |
| Resident Agent | * |
| 250 West Pratt Street, 24th Floor | |
| Baltimore, Maryland 21201 | * |
| | |
| Defendants | * |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>COMPLAINT</u>

Plaintiff Panera, LLC, by its attorneys, hereby files this Complaint against defendants

University of Maryland Medical System Corporation and University of Maryland Medical Center.

**PARTIES**

1.       Plaintiff Panera, LLC ("Panera") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 3630 South Geyer Road, Suite 100, St. Louis, Missouri 63127.  Panera operates bakery-cafe fast casual restaurants across the United States and is an affiliate of and under common ownership with ABP Corporation ("ABP"), a corporation organized under the laws of the State of Delaware with its principal place of business in the Commonwealth of Massachusetts.  ABP operates bakery-cafes under the trade name "Au Bon Pain."

2.       Defendant University of Maryland Medical System Corporation ("UMMS") is a corporation organized under the laws of the State of Maryland with its principal place of business located at 250 West Pratt Street, 24th Floor, Baltimore, Maryland 21201.  UMMS provides inpatient and outpatient care, medical education, community health services, and emergency medical treatment in Baltimore, Maryland and the surrounding area.

3.       Defendant University of Maryland Medical Center ("UMMC") is an unincorporated affiliate of UMMS.  UMMC operates a hospital located at 22 South Greene Street, Baltimore, Maryland 21201.

**JURISDICTION AND VENUE**

4.       Jurisdiction over UMMS is proper in that, at all times relevant to this action, UMMS has been organized under the laws of the State of Maryland and has maintained its principal place of business in the State of Maryland.

5.       Jurisdiction over UMMC is proper in that, at all times relevant to this action, UMMC has maintained its principal place of business in the State of Maryland.

6.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a) in that complete diversity of citizenship has existed among the parties at all relevant times, and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that the leasehold property that is the subject of this action is situated in this judicial district.

**FACTS**

8.     UMMS owns (a) the real property located at 22 South Greene Street, Baltimore, Maryland 21201, where it operates UMMC, and (b) the real property located at 110 South Paca Street, Baltimore, Maryland 21201, known as the Paca-Pratt Building, where it operates an office building.

9.     ABP entered into a Commercial Lease (the "Lease") with UMMS and UMMC (collectively, "Landlord") on March 1, 2011 to lease (a) 2,353 square feet of retail space adjacent to the lobby of UMMC's Homer Gudelsky Tower located at 22 South Greene Street to operate a cafe, selling, among other things, "baked goods, desserts, frozen desserts, salads, sandwiches, soups, hot dishes, juices, candies and novelties," and (b) approximately 1,495 square feet in the lobby of the Paca-Pratt Building located at 110 South Paca Street to operate a retail kiosk and a production site.  (*See* Lease, attached hereto as **Exhibit A**, §§ 1.2, 7.1, at 1, 7).  At all times from the inception of the Lease in 2011 to the present, the cafe in the lobby of UMMC at 22 South Greene Street and the kiosk in the lobby of 110 South Paca Street have operated under the trade name "Au Bon Pain."

10.     The parties to the Lease agreed to an "Initial Term" of ten (10) years and two "Option Terms" of five (5) years each, at Tenant's option, upon written notice to Landlord "at least

ninety (90) days before the expiration of the Initial Term, or prior Option Term, as the case may be." (*Id.* §§ 1.3, 3.1, 3.2, at 1, 4-5).

11.     The Lease requires payment of "Base Rent" to Landlord of (a) $275,000.00 per year, or $22,916.67 per month, during the first five years of the Initial Term, (b) $302,500.00 per year, or $25,208.33 per month, during the second five years of the Initial Term, (c) $332,750.00 per year, or $27,729.17 per month, during the first five-year Option Term, and (d) $366,025.00 per year, or $30,502.08 per month, during the second five-year Option Term. (*Id.* § 1.4, at 1-2). In addition, the Lease requires payment of "Percentage Rent" to Landlord annually in the amount of "ten percent (10%) of Gross Sales in excess of" $3,500,000.00 during the Lease Year, payable "within ninety (90) days after the end of each Lease Year." (*Id.* § 6.1(b), at 6).

12.     The Lease permits Tenant to maintain tables and chairs on both the outdoor patio that faces Greene Street and in the lobby "adjacent to" the leased premises at 22 South Greene Street for the use of Au Bon Pain patrons. (*Id.* § 19, at 19-20, and Exhibits B-1 and E to Lease).

13.     Under Section 21 of the Lease, "Landlord represents and warrants that there are no, and in the future shall be no, physical or legal conditions and/or impediments affecting the Premises that would now, or in the future, have the effect of: (a) disrupting, impairing or prohibiting, in any way, Tenant's intended use of the Premises, (b) increasing Tenant's obligations under the Lease, or (c) decreasing Tenant's rights" under the Lease. (*Id.* § 21, at 21).

14.     Section 24 of the Lease further provides that, "so long as this Lease is in full force and effect, Tenant shall lawfully and quietly hold, occupy and enjoy the Premises during the Term of this Lease without disturbance by Landlord." (*Id.* § 24, at 21).  Under Section 28 of the Lease, the parties similarly agreed that no "change made to the Hospital or the Premises" would "in any way materially or unreasonably affect or interrupt . . . Tenant's use, business or operations on the

Premises or obstruct the visibility or ingress and egress of the Premises (including, without limitation, Tenant's exterior signage)." (*Id.* § 28, at 22).

15.     Beginning in August 2019, representatives of ABP and UMMC, including counsel for both parties, discussed a potential amendment to the Lease that would (a) permit ABP to operate its cafe at 22 South Greene Street and its kiosk at 110 South Paca Street under the trade name "Au Bon Pain or Panera Bread or any other trade name then used by Tenant in the Premises" and (b) allow ABP to "cease operations . . . for up to sixty (60) days . . . for purposes of renovations and remodeling" to convert from the Au Bon Pain trade name to Panera Bread. (*See* emails between representatives of ABP and UMMC from August 28, 2019 through December 12, 2019, attached as **Exhibit B**, and draft Second Amendment to Lease, attached as **Exhibit C**, at 1). On December 11, 2019, ABP and UMMC agreed to a final version of a lease amendment that allowed for a temporary closure of the Au Bon Cafe at 22 South Greene Street to facilitate renovations, including the trade name change to Panera Bread. (*See* Exhibit B at 1-2). The same day, however, UMMC's Food & Hospitality Director, Mark Washenko, emailed Gerard Buckley of ABP stating that he would "be recommending we put on hold any further partnership [with ABP] until the current issues are addressed." Mr. Washenko was apparently referring to an earlier letter sent to ABP's General Manager and Regional Vice President of Operations, dated November 4, 2019, concerning certain purported operational issues at the Au Bon Pain cafe in UMMC's lobby. Upon receipt of the November 4, 2019 letter, ABP's General Manager, Lawrence Sambawei, and Regional Vice President, Abenet Geberegzabher, promptly scheduled a December 3, 2019 meeting with Sean Ambrose, UMMC's Vendor Contract Specialist, and Mr. Washenko to discuss a detailed response to UMMC's concerns, which ABP quickly and thoroughly addressed.

16.     On February 4, 2020, ABP followed up with UMMC about executing the previously agreed-upon lease amendment that would permit the conversion of the cafe at 22 South Greene Street from an Au Bon Pain to a Panera Bread.  UMMC's counsel responded on February 5, 2020 stating "there are outstanding issues that need to be resolved before execution."  (*See* email from Sandra H. Benzer, Esquire, Associate Counsel for UMMC, dated February 5, 2020, attached as **Exhibit D**, at 1).  By letter from UMMC dated February 17, 2020, but not received by ABP until March 10, 2020, UMMC again alleged violations of the Lease by ABP related to purported operational issues at the Au Bon Pain cafe at UMMC.  (*See* Letter dated February 17, 2020 from UMMC, attached as **Exhibit E**).  Again, ABP quickly addressed and resolved all of the issues raised.  (*See* Letter dated April 2, 2020 from ABP, attached as **Exhibit F**).  There were no further issues raised by UMMC in connection with ABP's operations over the ensuing fourteen months.

17.     In November 2020, following a pause in discussions due to the COVID-19 pandemic, ABP and UMMC restarted their conversation about a potential conversion of the cafe at 22 South Greene Street from an Au Bon Pain cafe to a Panera Bread cafe.  During a conference call on November 20, 2020, ABP and UMMC discussed the possibility of a local Panera Bread franchisee taking over the operation of the Au Bon Pain cafe at UMMC.  Notwithstanding the email correspondence and conference calls between ABP and UMMC on the subject, nothing was decided or agreed to during the November 20, 2020 call (or at any other time) regarding the conversion of the cafe at UMMC from Au Bon Pain to Panera Bread, and ABP provided no formal notice of any such conversion plan to UMMC.  UMMC, however, continued to express interest in a Panera Bread conversion by requesting, multiple times over several months, that ABP provide a formal proposal for a Panera Bread at the leased premises.

18.     Unbeknownst to ABP, at the same time the parties were discussing a possible conversion of the Au Bon Pain cafe to a Panera Bread cafe, UMMC was presenting plans to the Maryland Health Care Commission ("MHCC") and the Baltimore City Department of Planning for the construction of a tower on the front side of UMMC, facing Greene Street, to house a new cancer center funded in part by a lead gift of $25 million from Roslyn and Leonard Stoler.  The plans presented to the Baltimore City Department of Planning in February 2020 indicate that the premises leased by ABP would be significantly impacted and/or eliminated by the construction of the new cancer center.  (*See* UMMC Submission to the Baltimore Urban Design and Architectural Advisory Panel ("UDAAP")[1] for the Roslyn and Leonard Stoler Center for Advanced Medicine dated February 6, 2020, attached as **Exhibit G**, and UDAAP Meeting Minutes dated February 6, 2020, attached as **Exhibit H**).  In fact, the plans submitted by UMMC to UDAAP show that the Au Bon Pain cafe and the adjacent space on the patio and in the lobby used for patron seating would be removed and/or significantly impacted by UMMC's plan to replace the premises leased to ABP with a "patient garden."  (*See* Exhibit G at 8-11).  At no time did UMMC ever notify ABP of the plan to modify or eliminate the space used for its Au Bon Pain cafe in favor of a "patient garden" as part of UMMC's planned construction of a new building.

19.     Instead of receiving notice from UMMC regarding its construction plans, ABP learned about UMMC's planned new building from rumors circulating at the medical center.  In the fall of 2019, UMMC employees were apparently telling ABP employees that the Au Bon Pain cafe would close because of a planned and imminent construction project.  On June 24, 2020,

---

[1] "The Urban Design and Architecture Advisory Panel's role is to provide the Planning Commission and the Department of Planning design review expertise in the areas of urban design, architecture, and landscape design for all proposed master planning efforts and significant development projects with the goal of achieving high quality designs for the planned and built environment of Baltimore City." (https://planning.baltimorecity.gov/commissions-review-panels/udaap).

Gerard Buckley of ABP inquired with Mark Washenko and Sean Ambrose of UMMC about rumors ABP employees were hearing about construction plans at UMMC.  In response, Mr. Ambrose stated:

> There was an announcement made last year about plans to expand the Medical Center by building a cancer center tower onto the front of the building, but no definite plans have been shared with us regarding timelines or impact on access for patients, guests, vendors or employees at this time.  If any are shared with me that would impact Au Bon Pain, directly or indirectly, I will be sure to share them with your team and support as necessary to prevent negative impact on your operation and rebuilding business.

(*See* email from Sean Ambrose to Gerard Buckley, dated June 25, 2020, attached as **Exhibit I**, at 1).

20.     While Mr. Ambrose claims he was unaware of any plans, UMMC was apparently submitting plans and related documents to the MHCC and the Baltimore City Department of Planning.  Linda Whitmore, Director of Project Development for UMMC, was quoted in an article on February 6, 2020 stating that construction of the planned new building at 22 South Greene Street would begin 12-18 months after approval by the MHCC.  (*See UMMC achieves 'balance' with downtown cancer center design*, Baltimore Business Journal, February 6, 2020, attached as **Exhibit J**, at 4).  UMMC received approval of its requested Certificate of Need for the construction of a cancer center from the MHCC on August 20, 2020.  (*See* MHCC Certificate of Need Approval dated August 20, 2020, attached as **Exhibit K**, at 2 (noting that "as part of the proposed project, the existing lobby . . . of the main hospital [where the Au Bon Pain cafe is located] will be renovated").  Based on Ms. Whitmore's projected timeline, construction of the new tower at UMMC is scheduled to start this fall.

21.     During the first half of this year, and as recently as June 2021, ABP employees have been told by various sources at UMMC that the construction planned on the east side of UMMC,

facing Greene Street, would begin later in 2021 and that the premises leased for the Au Bon Pain cafe would be replaced by a "garden." (*See also UMMC South Entrance Closed Until Aug. 20*, The Elm Announcements, dated March 12, 2021, attached as **Exhibit L** ("As the University of Maryland Medical Center (UMMC) continues preparation for construction on the Roslyn and Leonard Stoler Center for Advanced Medicine, the South Entrance (Gudelsky Building Entrance) will be remodeled to serve as the new main entrance to the hospital during that construction.")).

22.    UMMC has never notified ABP that its cafe will be affected and/or eliminated by this long-planned construction of the Roslyn and Leonard Stoler Center for Advanced Medicine.

23.    It appears that UMMC did not notify ABP of the renovation and its impact on the leased premises because UMMC was under the mistaken impression that the Lease would terminate on its own terms on June 30, 2021, prior to the anticipated start of construction. ABP, however, provided timely written notice to UMMC on March 24, 2021 that ABP was exercising its first five-year option, extending the lease term to June 30, 2026. (*See* Letter dated March 24, 2021 from ABP exercising its option under Section 3.2 of the Lease to extend that Lease term for the First Option Term from July 1, 2021 through June 30, 2026, attached as **Exhibit M**). This seemed to come as a complete surprise to UMMC as it sent an "urgent request" to ABP on March 30, 2021 seeking a copy of the Lease, presumably to confirm the validity of the option that ABP exercised to extend the Lease term for an additional five years. (*See* email dated March 30, 2021 from Juvin Jacob, a Contracts Manager at UMMS, to Gerard Buckley at ABP, attached as **Exhibit N**, at 3).

24.    UMMC and ABP were scheduled to continue their conversation about a potential conversion of the Au Bon Pain cafe to a Panera Bread on May 6, 2021. UMMC, however, abruptly canceled the conference call claiming that ABP had failed to submit a "formal business plan

outlining the proposed conversion." On May 28, 2021, Sean Ambrose from UMMC emailed Gerard Buckley at ABP, asking for ABP's address under the ruse that he was "working on verifying the elements of our current agreements such as contact information and addresses." (*See* email dated May 28, 2021 from Sean Ambrose to Gerard Buckley, attached as **Exhibit O**). Later that day, he emailed a notice of termination of the Lease, dated May 26, 2021, purporting to terminate the Lease under Section 15 thereof. (*See* UMMC's email dated May 28, 2021 forwarding letter dated May 26, 2021 purporting to terminate the Lease, attached as **Exhibit P**).

25.     Section 15 of the Lease, entitled "Assignment and Subletting, provides, in part, as follows:

> Tenant may assign this Lease, or sublet all or a portion of the Premises, with Landlord's consent, which shall not be unreasonably withheld, conditioned, or delayed. Notwithstanding the foregoing, Tenant shall have the right, without Landlord's consent, to assign this Lease or sublease all or a portion of the Premises to an entity that: (a) controls, is controlled by, or is under common control with Tenant (each is an "Affiliate"); (b) arises as a result of a consolidation, merger or other reorganization with Tenant and/or Tenant's Affiliate; (c) owns or acquires all or substantially all of the assets or stock of Tenant and/or Tenant's Affiliate; (d) is an authorized franchisee or licensee of Tenant, and/or Tenant's Affiliate, (each of the foregoing is a "Permitted Transfer" and each such assignee or sublessee is a "Permitted Transferee").

(Exhibit A § 15, at 16).

26.     Section 15 of the Lease further states that "[a]ny transferee hereunder shall be required to operate at the Premises pursuant to the use clause hereunder, and under the trade name Au Bon Pain or the trade name being used by Tenant at the Premises." (*Id.* at 17). Section 15 additionally provides that, "[i]n the event that the transferee will use the Premises for a different use than set forth herein, and/or under a different trade name, Landlord shall have the right to approve such change, or Landlord may elect to terminate this Lease." (*Id.*).

27.    UMMC premised its May 26, 2021 notice of termination of the Lease on the ongoing discussions over the prior twenty-one (21) months regarding the ***possible*** conversion of the cafe at UMMC from an Au Bon Pain to a Panera Bread.  Contrary to UMMC's May 26, 2021 notice of termination, however, no decision has ever been reached regarding the conversion of the cafe at UMMC from an Au Bon Pain to a Panera Bread, and no such decision would be reached without UMMC's approval through a formal amendment to the Lease, as ABP sought beginning in 2019.  Instead, the cafe continues to operate as it always has – as an Au Bon Pain.[2]

28.    Notwithstanding the fact that there has been and will be no change from the Au Bon Pain trade name to the Panera Bread trade name without UMMC's consent, UMMC's May 26, 2021 letter to ABP stated that "Landlord UMMS and UMMC hereby provides notice that it does not approve [the operation of the cafe as a Panera Bread] and effective immediately, Landlord is exercising its termination rights under Section 15 of the Lease."  (*See* Exhibit P).

29.    The cafe at UMMC continues to operate as an Au Bon Pain, and there are no plans to change the cafe's trade name during the remainder of the Lease term without UMMC's consent.  Accordingly, UMMC's purported termination of the Lease pursuant to Section 15 as a result of ABP's non-existent conversion to a Panera Bread is without basis.  Notwithstanding the foregoing, UMMC's outside counsel doubled down on the notice of termination by letter dated June 24, 2021, emphasizing his "client's intention to proceed with the Lease termination in accordance with Section 15, effective October 1, 2021."  (*See* Letter dated June 24, 2021 from William M. Bosch, Esquire, attached as **<u>Exhibit Q</u>**, at 1).

---

[2] Panera does not concede that Landlord's approval is required to change the trade name of the cafe from "Au Bon Pain" to "Panera Bread."  That said, Panera has not, and will not, make such a change without notice to and approval of Landlord in light of the collaborative relationship that Panera has always sought with Landlord.

30.    Pursuant to an Assignment and Assumption of Lease dated June 17, 2021, ABP assigned the Lease to Panera.  (*See* Assignment and Assumption of Lease, attached as **Exhibit R**). Under Section 15 of the Lease, ABP had "the right, without Landlord's consent, to assign this Lease . . . to an entity that . . . controls, is controlled by, or is under common control with Tenant." (Exhibit A § 15, at 16).  ABP is an indirect wholly owned subsidiary of Panera Bread Company, and Panera is a wholly owned subsidiary of Panera Bread Company.  Accordingly, the Lease did not require ABP to obtain the consent of Landlord to assign the Lease because Panera is "under common control" with ABP.  Since the Assignment, Panera has continued to operate the leased premises under the trade name "Au Bon Pain," just as its affiliate, ABP, did.

31.    UMMC, through counsel, has denied that the construction of the new tower for the Roslyn and Leonard Stoler Center for Advanced Medicine has anything to do with UMMC's baseless notice of termination of the Lease under the "different trade name" provisions of Section 15 of the Lease.  By letter dated July 23, 2021 to outside counsel for ABP, counsel for UMMC stated as follows:

> With respect to the Cancer Center, the notion that UMMC is enforcing its rights under the Lease to terminate ABP on a pretextual basis to facilitate its development plans is simply false.  Your letter reflects a misapprehension concerning the plans for the Cancer Center, the communication about those plans, and the impact on ABP.  Although construction activity on the Cancer Center undoubtedly will cause disruption in and around the Premises, UMMC does not anticipate that the construction will materially impair ABP's operations.  In short, UMMC is prepared to build around ABP.

(*See* Letter dated July 23, 2021 from William M. Bosch, Esquire, attached as **Exhibit S**, at 2-3). In that letter, counsel for UMMC also stated that UMMC was "accelerating the termination [of the Lease] to September 1, 2021."  (*Id.* at 3).

32.     In neither the July 23, 2021 letter from its attorney nor anywhere else has UMMC explained how (a) the renovation of its lobby, where the Au Bon Pain cafe is located, referenced in connection with the MHCC's approval of UMMC's Certificate of Need, and (b) the construction of a "patient garden" shown on the plans submitted by UMMC in the UDAAP review process on the very location of the Au Bon Pain cafe seating area could allow for UMMC to "build around" the cafe in a manner consistent with UMMC's obligations to its tenant under Sections 19, 21, 24, and 28 of the Lease.

33.     Even while UMMC continues its bellicose rhetoric and threats of termination of the Lease, Panera has sought to engage in a business resolution with UMMC to avoid litigation. Panera values the long relationship with UMMC, through Panera's affiliate, ABP, and has met and overcome operational challenges and substantial economic losses while serving the hospital community without interruption through the teeth of the pandemic.

34.     Notwithstanding Panera's continued operations under the Au Bon Pain trade name and its unequivocal willingness to continue to serve the UMMC community through the conclusion of the Lease term as an Au Bon Pain cafe, UMMC has (a) rebuffed Panera's efforts to reach a detente, (b) refused to provide any details regarding the impact that the planned construction of the new tower housing the Roslyn and Leonard Stoler Center for Advanced Medicine will have on its tenant's operations, and (c) refused to withdraw its groundless notice of termination.  Instead, UMMC's counsel has made clear that it will not engage with Panera unless Panera agrees to a new lease (presumably one that does not interfere with UMMC's planned construction project): "Ultimately, my client is prepared to evaluate a new lease with a potential Panera Bread franchisee. As discussed, if there is to be a business resolution at all, those are the parameters." (*See* Letter dated August 16, 2021 from William M. Bosch, Esquire, attached as **Exhibit T**, at 2).

35.     On August 23, 2021, UMMC sent yet another notice of termination of the Lease, this time alleging a breach of Section 7.3 of the Lease, requiring that the kiosk at 110 South Paca Street be open from 7:00 a.m. to 5:00 p.m. Monday through Friday.  (*See* Letter dated August 23, 2021 from UMMC, attached as **Exhibit U**, at 1).  The August 23, 2021 letter further asserted UMMC's right to claim other defaults under the Lease, including (a) unspecified alleged defaults under the "Quality Controls" provisions of Section 7.6 of the Lease relating to "sanitation problems" and (b) the continued baseless assertion of an anticipatory breach of Section 15 of the Lease as a result of a trade name change from Au Bon Pain to Panera Bread – which UMMC knows well has not and will not be implemented without its consent.  (*Id.*).

36.     The August 23, 2021 letter continues UMMC's pattern of intimidation and threats and fails to set forth a basis under which UMMC is permitted to terminate the Lease.  At all times, ABP and Panera have complied substantially and in good faith with the requirements of the Lease.  Over the past decade, ABP and its affiliate, Panera, have timely paid the rent due under the Lease, complied with the Lease terms, and addressed expeditiously any operational concerns raised by Landlord.  Any shortcomings by ABP and Panera with respect to the terms of the Lease have been inadvertent, immaterial, and/or corrected and do not warrant termination of the Lease and eviction under Maryland law.

37.     UMMS and UMMC want a new Lease with Panera to make way for the planned construction of the Roslyn and Leonard Stoler Center for Advanced Medicine and the "patient garden" on the site of the Au Bon Pain cafe.  Rather than being forthright with Panera about the need to move the Au Bon Pain cafe and negotiating a business resolution, UMMC seeks to terminate the Lease and evict its tenant through self-help without legal basis.  UMMC's August 23, 2021 letter states as much: "PLEASE TAKE NOTICE that due to these repeated and

documented breaches, the Lease is terminated effective 11:59pm on September 30, 2021 (the 'Termination Date'). After such date, any employees or agents of ABP and/or its affiliates will be prohibited entry to the Premises (as defined in the Lease)." (*See* Exhibit U at 2). If UMMC carries out its unjustified threats to terminate the Lease and bar Panera from the premises, Panera will lose the benefit of operating at UMMC over the next decade, resulting in substantial lost revenues, harm to its reputation, loss of current and future customers, and loss of good will.

38.     Given the sharp disputes that exist with respect to the parties' divergent interpretations of the Lease, UMMC's claimed breaches of the Lease, and UMMC's threats to terminate the Lease and evict Panera seemingly based on UMMC's desire to undertake a large construction project without the interference of its tenant's leasehold interest, Panera seeks the Court's intervention and declaration of the parties' rights and obligations under the Lease.

39.     Under Section 31.14 of the Lease, Panera is entitled to recover from UMMS and UMMC the costs and expenses, including reasonable attorney's fees, that it has incurred and will incur in bringing this action.   (Exhibit A § 31.14, at 24).

### COUNT I
### (Declaratory Judgment)

40.     Panera incorporates by reference the allegations in paragraphs 1-39, as if set forth herein.

41.     Where an "actual controversy within its jurisdiction" exists, the federal Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

42.     A declaratory judgment is proper in this case in that (a) there is an actual controversy between the parties of sufficient immediacy and reality concerning Panera's

compliance with the terms of the Lease and whether UMMC may terminate the Lease and evict Panera under Maryland law, as threatened most recently in UMMC's August 23, 2021 notice of termination (Exhibit U) and (b) the Court has subject matter jurisdiction over the parties as a result of the diversity of citizenship of the parties and an amount in controversy in excess of $75,000.00, exclusive of interest and costs.  The Court should exercise its discretion in granting declaratory relief as a declaratory judgment (i) will serve a useful purpose in clarifying and settling the parties' sharply contested rights and obligations under the Lease and (ii) will terminate and afford relief from uncertainty, insecurity, and controversy regarding UMMC's purported right to terminate the Lease and evict Panera from the leased premises with up to ten years remaining in the Lease term.

WHEREFORE, plaintiff Panera, LLC, as the assignee of ABP, respectfully request that the Court:

(a)    Determine and adjudicate the rights and liabilities of the parties with respect to the Lease;

(b)    Declare that Panera and ABP have complied substantially with the terms of the Lease;

(c)    Declare that UMMS and UMMC are not entitled to terminate the Lease or evict Panera from the leased premises under the terms of the Lease and/or Maryland law;

(d)    Award Panera the costs and expenses, including reasonable attorney's fees, that it has incurred under Section 31.14 of the Lease; and

(e)    Award Panera other such further relief as this Court deems necessary and proper.

**COUNT II**
**(Anticipatory Breach of Contract)**

43.    Panera incorporates by reference the allegations in paragraphs 1-42, as if set forth herein.

44.     Section 24 of the Lease further provides that, "so long as this Lease is in full force and effect, Tenant shall lawfully and quietly hold, occupy and enjoy the Premises during the Term of this Lease without disturbance by Landlord."  (Exhibit A § 24).

45.     By threatening to lockout "any employees or agents" of Panera from the leased premises after midnight on September 30, 2021, UMMS and UMMC have conveyed a definite, positive, and unconditional refusal to abide by their clear and unambiguous obligations under Section 24 of the Lease through self-help that is not permitted under the Lease or Maryland law.

46.     In addition, based on the submissions as part of the MHCC's review of UMMC's Certificate of Need Application and as part of the City of Baltimore UDAAP review process, UMMS and UMMC will alter, affect, or eliminate the leased premises at issue in connection with the construction of the Roslyn and Leonard Stoler Center for Advanced Medicine and an adjacent "patient garden" – a second definite, positive, and unconditional refusal to abide by their clear and unambiguous obligations of the Lease.

47.     As a result of the foregoing anticipatory breaches of the Lease, Panera will suffer substantial damages.

WHEREFORE, plaintiff Panera, LLC demands judgment against defendants UMMS and UMMC, jointly and severally, for compensatory damages in an amount in excess of $75,000.00, the exact amount to be determined at trial, plus interest, costs, attorney's fees, and such other and further relief as the Court deems just and equitable.

Respectfully submitted,


_____/s/_____
James H. West (Federal Bar # 25773)
West, Edwards & Associates, LLC
409 Washington Avenue, Suite 1010
Towson, Maryland 21204
Tel: 410-842-0574
Fax: 410-296-6654
jay.west@wealaw.com

*Attorneys for plaintiff*
*Panera, LLC*